**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-60532
Summary Calendar

---

INGALLS SHIPBUILDING, INC.,

Petitioner,

VERSUS

JAMES E. WOOLEY;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondents.

---

Petition for Review of an Order of the
Benefits Review Board

---

March 2, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

Petitioner, Ingalls Shipbuilding, Inc. ("Ingalls") seeks review of a final order of the Benefits Review Board, United States Department of Labor on Respondent, James E. Wooley's claim for

benefits made pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 (1994)("LHWCA"). We affirm.

Wooley was permanently disabled by an injury sustained during his employment with Ingalls. After a hearing before an Administrative Law Judge, Wooley received an award of benefits, based on the calculation that Wooley's average weekly wage had been $575.43. Ingalls appealed to the Benefits Review Board ("BRB") and prevailed to the extent that the BRB concluded that Wooley's average weekly wage was only $551.70, using a different method of factoring in his vacation and holiday compensation.[1] On Motion for Reconsideration the BRB vacated its first decision and affirmed the ALJ's original calculation. Ingalls now appeals, asking this court to resolve the question of the appropriate treatment of vacation compensation in LHWCA average weekly wage calculations.

Under LHWCA, compensation for an injury is based upon an injured worker's average weekly wage at the time of his injury. *See* 33 U.S.C. § 910. When a claimant worked substantially the whole of the year immediately preceding his injury, as Wooley did, § 910(a) of the LHWCA controls the method of calculating his average weekly wage. Section 910 provides:

> Except as otherwise provided in this Act, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute

---

[1] For purposes of this opinion, there is no meaningful distinction between vacation compensation and holiday compensation. For the sake of simplicity, we therefore refer to the disputed amounts as vacation compensation.

2

compensation and shall be determined as follows:

> (a) if the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times the average daily wage or salary for a six-day worker and 260 times the average daily wage or salary for a five day worker, which he shall have earned in such employment during the days when so employed.

33 U.S.C. § 910(a).  Section 910(d)(1) provides that the average weekly wage is then derived by dividing the total annual earnings calculated under § 910(a) by 52.

Wooley was a five-day worker.  Wooley's daily work records contain work entries on 256 different days in the 52 weeks prior to the date of injury, including four entries for vacation compensation, with total earnings of $29,462.10.  The ALJ counted the four entries for vacation pay as four days, although it is undisputed that Wooley was paid for a total of 120 vacation hours[2] which Ingalls contends should be counted as 15 8-hour days.  The ALJ divided the total earnings by 256 days to arrive at a daily wage of $115.08 [3], which he multiplied by 260, pursuant to 910(a),

---

[2]

| DATE | COUNTED AS | PAID FOR |
|------|-----------|----------|
| 05/10/92 | 1 day | 24 hours |
| 12/27/92 | 1 day | 32 hours |
| 01/01/93 | 1 day | 48 hours |
| 12/20/92 | 1 day | 16 hours |
| total: | 4 days | 120 hours |

[3] $\frac{\$29,462.10}{254+2} = \$115.08$

3

to arrive at an annual wage of $29,922.44. He then divided the annual wage by 52 to arrive at an average weekly wage of $575.43. Ingalls argues that Wooley's $29,462.10 earnings should have been divided by 267 (252 days worked plus 15 eight-hour vacation days), to arrive at an average daily wage of $110.34.[4]

Our review of BRB decisions is limited to determining whether the BRB correctly concluded that the ALJ's order was supported by substantial evidence on the record as a whole and is in accordance with the law. *See Ingalls Shipbuilding, Inc. v. Director, OWCP*, 991 F.2d 163, 165 (5th Cir. 1993).

The calculation mandated by § 910(a) "aims at a theoretical approximation of what a claimant could ideally have been expected to earn" in the year prior to his injury. *Duncan v. Washington Metro. Area Transit Auth.*, 24 Ben. Rev. Bd. Serv. (MB) 133 (1990). That approximation includes what the claimant would have earned had he worked every available work day in the year. *See Duncanson-Harrelson Co. v. Director, OWCP [Freer]*, 686 F.2d 1336 (9th Cir. 1982), *vacated on other grounds*, 462 U.S. 1101 (1983). This case presents a *res nova* question concerning how vacation days that are "sold back" to the employer for money value instead of taking time off from work should be considered in the calculation. An employer who chooses to offer such payments to its employee obviously

---

[4] $$\frac{\$29,462.10}{252+15} = \$110.34$$

4

increases the amount that employee "could ideally have been expected to earn." Section 910(a) envisions a calculation that will allow the employee LHWCA benefits based on that expectation. We decline Ingalls's invitation to create a bright-line rule concerning how all vacation compensation will be treated under § 910(a). Rather, we find it more appropriate to charge the ALJ with making fact findings concerning whether a particular instance of vacation compensation counts as a "day worked" or whether it was "sold back" to the employer for additional pay. In this case, the ALJ concluded that Wooley took four vacation days, which were treated as days worked, and "sold back" eleven more eight-hour days, which were not treated as days worked, but rather as additional compensation to be added to Wooley's annual wage. The BRB correctly concluded that the ALJ's order was supported by substantial evidence on the record as a whole and is in accordance with the law. We therefore affirm.

AFFIRMED.